**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

Victoria Insurance Company,       )
          )
       Plaintiff,       )
          )
   -vs-         )    2:08-cv-909
          )
Mincin Insulation Services, Inc.,   )
          )
       Defendant.      )

AMBROSE, Chief District Judge.

## OPINION AND ORDER

### Synopsis

In this insurance coverage dispute, Plaintiff, Victoria Insurance Company, ("Victoria"), filed a motion for summary judgment requesting an order indicating that its insurance policy exclusion precluded it from providing its insured, Mincin Insulation Services, Inc., ("Mincin"), with a defense and insurance coverage in an underlying lawsuit. For reasons set for below, I will grant Victoria's motion.

### OPINION

**I. Applicable Standards**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Knabe v. Boury*, 114 F.3d 407, 410 (3d Cir. 1997) (citing F.R.Civ.P. 56). A fact is material when it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

When considering a motion for summary judgment, the courts examine the facts in the light most favorable to the non-moving party. *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248.

Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. *Id.* at 324. Summary judgment must therefore be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988), quoting, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## II. Procedural Background

This coverage action relates to an underlying lawsuit filed in the Allegheny County Court of Common Pleas brought by Mincin's employee against two of his co-workers for assault and battery and against Mincin for negligence. (*Michael McHugh v. Anthony Villella, et al.,* docket no. GD-06-017653, hereinafter, the "McHugh Litigation"). The complaint filed in McHugh Litigation alleges that two of McHugh's co-workers, (Villella and Walker) intentionally struck McHugh causing him to sustain injuries. This complaint also alleges that Mincin owed a duty of care to McHugh, and that Mincin knew or should have known that Villella and Walker posed a threat to the other Mincin employees and breached that duty by hiring them. McHugh's complaint also alleges that  Mincin

"caused or partially caused" McHugh's injuries because Mincin failed to: (1) adequately research Villella and Walker's backgrounds, (2) properly train Villella and Walker, (3) adequately supervise Villella and Walker, and (4) intervene when Villella and Walker attacked McHugh. (A copy of the complaint was attached as Exhibit A to Victoria's appendix in support of its motion for summary judgment. *See*, Document no. 23-2, ¶¶ 24-30).

McHugh filed his complaint in Allegheny County on February 2, 2007. Victoria filed the instant lawsuit on June 30, 2008 seeking a declaratory judgment that the commercial general liability policy it issued to Mincin precludes Victoria from providing a defense to Mincin as well as coverage for the claims asserted against Mincin in the McHugh Litigation.

## III. Legal Analysis

The parties agree that Pennsylvania law governs the interpretation of the insurance policy. Under Pennsylvania law, "[t]he task of interpreting [an insurance] contract is generally performed by a court rather than by a jury." *401 Fourth Street, Inc. v. Investors Ins. Group*, 583 Pa. 445, 454 879 A.2d 166, 171 (2005). The goal in interpreting insurance policies is "to ascertain the intent of the parties as manifested by the terms used in the written insurance policy." *Ibid.* Generally, "when the language of the policy is clear and unambiguous, a court is required to give effect to that language[,]" but "[w]hen a provision in a policy is ambiguous . . . the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage. *Countryway Ins. Co. v. Slaugenhoup*, 619 F.Supp.2d 190, 194 (W.D.Pa. 2008) *citing, Gene & Harvey Builders, Inc. v. Pennsylvania Manufacturers' Association Ins. Co.*, 512 Pa. 420, 517 A.2d 910, 913 (1986).

Pennsylvania's Supreme Court has held that "[t]he duty to defend is a distinct obligation,

separate and apart from an insurer's duty to provide coverage." *Erie Ins. Exchange v. Transamerica Ins. Co.*, 516 Pa. 574, 583, 533 A.2d 1363, 1368 (1987). To determine when an insurance company must defend its insured, the Supreme Court has held:

> [a]n insurer's duty to defend an action against the insured is measured, in the first instance, by the allegations in the plaintiff's pleadings.... In determining the duty to defend, the complaint claiming damages must be compared to the policy and a determination made as to whether, if the allegations are sustained, the insurer would be required to pay resulting judgment ... . [T]he language of the policy and the allegations of the complaint must be construed together to determine the insurers' obligation.

*Donegal Mut. Ins. Co. v. Baumhammers*, 595 Pa. 147, 155, 938 A.2d 286, 290 (2007), *citing, Gene's Restaurant Inc. v. Nationwide Ins. Co.*, 519 Pa. 306, 308, 548 A.2d 246, 247 (1988). Simply put, an insurer owes a duty to defend under a policy when "the allegations in the complaint against [the insured] could potentially fall within the coverage of the policy." *Air Products & Chemicals v. Hartford Acc. & Indem. Co.*, 25 F.3d 177, 179 (3d Cir. 1994).

Here, Victoria's insurance policy provides Mincin with coverage for "those sums that [Mincin] becomes obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies." Further, the policy notes that Victoria "will have ... the duty to defend [Mincin] against any suit seeking those damages" but will not have a duty to defend Mincin "against any suit seeking damages for 'bodily injury' ... to which this insurance does not apply." Victoria's policy also contains exclusions which establish when the insurance will not apply.

The "Combined Coverage and Exclusion Endorsement" indicates, in relevant part, as follows:

X. Assault and Battery Exclusion

This insurance does not apply to Bodily Injury or Property Damage arising from:

4

1.  Assault and Battery committed by ... any employee of [Mincin];
2.  The failure to suppress or prevent Assault and Battery by any person in A., above; or
3.  Any Assault or Battery resulting from or allegedly related to the negligent hiring, supervision, or  training of any employee of [Mincin].

Victoria notes that the underlying McHugh complaint alleges that McHugh, an employee of Mincin, sustained bodily injury when he was assaulted and battered by two co-workers on Mincin's property after all three men had clocked in for the day.  According to Victoria, coverage for the assault and battery claim is precluded by exclusion X. 1., set forth above. In addition, Victoria suggests that coverage for Mincin's alleged negligent hiring, supervision, and training of the two aggressive co-workers are similarly precluded by this exclusion.  Relying on *Britamco Underwriters Inc. v. Grzeskiewicz*, 639 A.2d 1208 (Pa. Super 1994) and *Acceptance Insurance Co. v. Seybert*, 757 A.2d 380 (Pa. Super. 2000), Victoria requests summary judgment.

In response, Mincin attempts to distinguish the facts of its case from *Britamco* and *Seybert* suggesting that those cases involved an underlying complaint where the injuries sustained by the underlying plaintiff arose <u>solely</u> out of an assault and battery claim, not both assault and battery and negligence.  In addition, Mincin suggests that its facts are more akin to situations described in *Essex Ins. Co. v. Starlight Management Co.*, 198 Fed. Appx. 179 (3d Cir. 2006), *QBE Insurance Co. v. M & S Landis Corp.*, 915 A.2d 1222 (Pa. 2007), and *Alea London Ltd. v. Woodlake Management*, 594 F.Supp.2d 547 (E.D.Pa. 2009).

While none of the cases referenced by the parties are factually identical to the instant matter, I find *Seybert* and *QBE* are useful in deciding this matter. I also find *Alea* to be instructive on the issue before me and its comparative analysis of the *Seybert* and *QBE* cases to be well-reasoned.

In *Seybert*, the plaintiff was attacked in a hotel parking lot by five individuals who began

their night by drinking in a nearby bar and continued drinking at the hotel immediately prior to the parking lot attack.  757 A.2d at 381. The plaintiff sued the bar (among others) claiming it served the five men while they were visibly intoxicated in violation of a state statute, rendering the bar negligent *per se*.  *Id.* When the bar sought coverage for the incident, Acceptance, the bar's insurance carrier, filed a declaratory judgment action in state court asking the court to determine that it had no obligation to defend or indemnify the bar in the underlying lawsuit due to an "assault and battery exclusion" in the policy.  *Id.* The trial court granted Acceptance's summary judgment motion.

The *Seybert* Court noted that Acceptance's policy afforded coverage to the bar for liquor liability, but it contained an assault and battery exclusion which stated that, "... the insurance does not apply to [b]odily [i]njury ... arising out of assault and/or battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of the insured, his employees, patrons or any other person."  *Id.* at 382.  The Court also noted that the underlying complaint contained no allegations that the plaintiff's injuries "were caused in any way other than by assault and battery by the five men in the [hotel] parking lot" and that there was "no suggestion" that the plaintiff's injuries were negligently caused by the bar's employees. *Id.* at 383. Affirming summary judgment in favor of Acceptance, the *Seybert* Court concluded that, "the clear, unambiguous language excludes precisely the type of conduct complained of in the underlying tort action." *Ibid.*

In *QBE*, the Superior Court reversed the trial court's decision to grant an insurer summary judgment in its declaratory judgment action. 915 A.2d at 1224.  The plaintiffs in the underlying matter brought a wrongful death and survival action against a nightclub alleging Mr. Potter (the decedent) was smothered to death when he was evicted and wrestled to the ground by bouncers from

6

the nightclub. *Ibid.*  The underlying complaint alleged that after evicting Potter from the nightclub, the bouncers improperly restrained him by laying on top of him, pinning him to the ground, rendering him unable to breath and ultimately, causing his death. *Ibid*. When the nightclub sought a defense and coverage from its insurer, the insurer attempted to disclaim both relying on the assault and battery exclusion which stated, "[t]his insurance does not apply to [...] 'bodily injury' [...] arising from [...] [a]ssault and [b]attery or any act or omission in connection with the suppression of such acts[.]" *Id.* at 1228.  The trial court, relying on *Seybert,* granted summary judgment in favor of the insurer.

On appeal, the Superior Court explained that the *Seybert* complaint failed to raise any allegations that plaintiff's actual injuries were caused by negligence and instead only pled that the injuries were caused by the assault and battery; but, in *QBE,* the complaint contained allegations that the negligence directly caused the death of Potter.  *Id.* at 1229.  Because the "causation" allegations in the *QBE* case indicated that negligence caused Potter's death, the *QBE* Court held that the assault and battery exclusion would not apply.  *Ibid.*

Finally, in *Alea,* the underlying state court case arose out of a shooting which occurred on the insureds' property injuring the plaintiff, Mr. Abdulah.  594 F.Supp.2d at 549.  The insurer filed a declaratory judgment action in the Eastern District Court of Pennsylvania requesting a declaration that the insurance policy's assault and battery exclusion absolved it of its duty to defend and indemnify the insureds, who owned and managed the property where Abdulah was shot. *Ibid*.

In the underlying complaint, Abdulah alleged the shooter entered the insureds' apartment building through a door with a broken security lock. *Ibid*. He claimed the insureds knew or should have known about the broken lock and that they negligently failed to inspect, maintain and repair the

premises, and that they negligently trained, instructed, supervised or taught their employees on how to properly repair the premises. *Ibid*.

Because both the insurer and the insureds in the *Alea* case relied on the *Seybert* and *QBE* cases in support of their respective positions, the *Alea* Court discussed them in detail and noted that the *QBE* complaint alleged the negligence of insured's employees <u>directly</u> caused the injuries, but the *Seybert* complaint lacked any allegation suggesting that the plaintiff's injuries were negligently caused directly by the insured's employees. *Id.* at 551.

Based on the *Seybert* and *QBE* decisions, the *Alea* Court held that its insurer would have a duty to defend its insureds if Abdulah's complaint alleged that the insureds' negligence caused harm independent from the shooting or directly caused his injuries "as opposed to merely contributing to his injuries." *Ibid*. Because the *Alea* Court found that Abdulah's complaint did not allege that any of his injuries arose directly from the negligence of the insureds or that he suffered any injuries other than those caused by the shooting, the court concluded the insurer had no obligation to defend or indemnify based on the language of the insurance policy's assault and battery exclusion.[1] *Id.* at 552.

Applying *Seybert*, *QBE* and *Alea* to the instant matter, if McHugh's complaint contained an allegation that he suffered injuries other than those caused by the physical attack he endured, or that somehow Mincin's negligence directly caused his injuries, the assault and battery exclusion would not release Victoria of its duty to defend Mincin. Mincin argues that because the McHugh complaint alleges that Mincin's negligent acts "caused or partially caused" his injuries this court cannot

---

[1] The policy specifically indicated it did not apply to "any claim arising out of an assault and/or battery regardless of the culpability or intent ... or out of any act or failure to prevent or suppress such assault and/or battery" and further indicated that the exclusion applied "to all causes of action arising out of an assault and/or battery regardless of an assault and/or battery or a physical altercation including ... negligent hiring, placement, training, or supervision or to any act error or omission relating to such an assault and/or battery ... ."

determine as a matter of law whether the assault and battery exclusion applies.  (Mincin brief, doc. No. 25, pp.5-6).  Victoria suggests that the McHugh complaint fails to allege that Mincin's negligence: (1) caused harm independent from the assault and battery, and (2) directly caused McHugh's injuries. (Victoria's brief, doc. no 21, p. 13-14).

First, the McHugh complaint contains no allegation that McHugh suffered injuries other than those caused by the physical attack he endured.  Accordingly, Mincin cannot meet the first requirement articulated in *Seybert* and *Alea*.

Second, although McHugh's complaint alleges that Mincin's negligent behavior (for example, its failure to intervene in the altercation among the men), "caused or partially caused" McHugh's injuries, these allegations, at best, suggest that Mincin's alleged negligent conduct indirectly caused McHugh's injuries.  By way of further example, the alleged negligent hiring of the two men, or the alleged negligent training or supervising of the two aggressors did not directly cause McHugh's injuries – the blows inflicted by his co-workers did.  The gravamen of the allegations against Mincin are predicated on the assault and battery inflicted by two of McHugh's co-workers.  Simply put, the blows inflicted on McHugh by his co-workers were the direct cause of his physical injuries, and there is no allegation which suggests that those injuries were not directly caused by any negligent act or omission on Mincin's part.

Based on the foregoing law and authority, as well as the allegations found in the McHugh complaint, I will grant Victoria's motion for summary judgment.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Victoria Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | 2:08-cv-909 |
| | ) | |
| Mincin Insulation Services, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER OF COURT</u>

And now, this 15th day of September, 2009, for reasons set forth in the accompanying Opinion, the Plaintiff's motion for summary judgment is granted.


BY THE COURT:

s/ <u>Donetta W. Ambrose</u>
Donetta W. Ambrose,
Chief U.S. District Judge